Mr. Michael Halpern Attorney for Monroe County Mosquito Control District 618 Whitehead Street Key West, Florida 33040
Dear Mr. Halpern:
This is in response to your request for an opinion on substantially the following question:
 IS THE BOARD OF COMMISSIONERS OF THE MONROE COUNTY MOSQUITO CONTROL DISTRICT AUTHORIZED TO BORROW MONEY AT THE CURRENT PREVAILING INTEREST RATES?
Your letter states that the Monroe County Mosquito Control District is in a financial condition that requires it to obtain short term loans to pay operating expenses until such time as tax revenues are received, but does not specify the time such tax revenues are expected to be received by the district or whether within the 1981-1982 fiscal year or the 1982-1983 fiscal year. You also state that the mosquito control district urgently needs to obtain funds at this time but has been unable to obtain bids for loans from lending institutions because of the statutory restrictions on interest rates. You therefore ask whether the district may legally borrow the needed funds (the amount needed is not specified) at current prevailing interest rates.
Initially, I note that the necessity for and feasibility of the contemplated borrowing or the wisdom thereof are matters which must be determined by the governing board of the district and are beyond the scope of my authority and this opinion. This opinion assumes and is conditioned upon full compliance with the requirements of s 218.34, F.S., and the financial reporting requirements of ss 189.006(2), 218.32 and 218.38, F.S. Further, this opinion is confined to the sole question of the allowable rate of interest on short term loans to the district, i.e., loans for a term of 12 months or less pursuant to the authority to borrow provided in the district's enabling legislation, as amended. See s 2 of Ch. 74-537, Laws of Florida, which authorizes the district to borrow money in an amount not to exceed $150,000 for a period of time not to exceed 2 years and to issue negotiable promissory notes or such necessary instruments to secure such loan to enable the district to carry out the provisions of its enabling statute, as amended. Despite the statutory authorization for a 2 year period, any such borrowing for a term in excess of 12 months payable from ad valorem taxes would be controlled by and subject to s 12 of Article VII, State Constitution.
The primary source of revenue for the district is ad valorem taxation and the district possesses the power to `levy upon all the taxable property in said district a tax not exceeding one and one half (1 1/2) mills on the dollar during each year solely for the purposes authorized and prescribed' by the enabling legislation of the district. Chapter 70-816, s 1, Laws of Florida. Additionally, in 1976, the Legislature authorized the district to `set up and maintain a properly controlled public mix program providing for the alleviation of mosquito and other arthropod infestations throughout the district.' Section 3 of Ch. 76-440, Laws of Florida. This statute also gives the board of commissioners of the district the authority to `establish a fee schedule or provide mix to the public free of charge.' Section 5 of Ch. 67-1726 authorizes the board of commissioners of the district, among other things, `to issue negotiable promissory notes and bonds in an amount not to exceed one hundred fifty thousand ($150,000.00)' in order to carry out the purposes of the mosquito control district specified in the act, and s 2 of Ch. 74-537, Laws of Florida, authorizes the board `to borrow money in an amount not to exceed one hundred fifty thousand dollars ($150,000) for a period of time not to exceed two (2) years and to issue negotiable promissory notes or such necessary instruments to secure said loan' in order to carry out the prescribed purposes of the enabling legislation, as amended. The statute does not expressly authorize the district to pay interest on its debts or authorize its governing board to contract to pay interest on its obligations or to determine rates of interest to be paid. In this regard, see generally Treadway v. Terrell, 158 So. 512 (Fla. 1935); and see Board of Public Instruction v. Barefoot,193 So. 823 (Fla. 1939).
Restrictions on the rate at which special districts or any other public agency or body could borrow money when authorized to do so were previously contained in ss 130.012 and 215.685, F.S. (1979). The provisions of these two statutes relating to the limitation of interest rates at which enumerated units of government could borrow money were identical. Bonds, certificates or other obligations of any type of character could bear interest at a rate not to exceed 7 1/2 percent per annum. However, the 1980 Legislature enacted Ch. 80-318, Laws of Florida which repealed s 215.685, F.S. (1979); and the 1981 Legislature by the enactment of Ch. 81-321, Laws of Florida, repealed s 130.012, F.S. (1979).
However, Ch. 80-318 created s 215.84, F.S., which, among other things, regulates the maximum interest rates allowable on general obligation bonds of public agencies authorized by law to issue bonds. Such bonds are defined by subsection (2)(b)1. of s 215.84, F.S., to mean `obligations secured by the full faith and credit of a governmental unit or payable from the proceeds of ad valorem taxes of a governmental unit.' In general usage, a bond is a written obligation to pay or guarantee of the payment of a stated sum of money on or before a specified day. See The Random House Dictionary of the English Language 168 (1967); Black's Law Dictionary 224 (Rev. 4th Ed. 1968); 11 C.J.S. Bonds s 1 (1938). The loans provided for in s 2 of Ch. 74-537, Laws of Florida, and the described instruments to secure any such loans fall within the general definition of `bonds,' and, being obligations secured by the full faith and credit of the district or payable from the proceeds of ad valorem taxes of the district, fall within the definition of `bonds' set forth in s 215.84(2)(b)1., F.S. Therefore, I conclude that a written obligation or evidence of indebtedness issued by the governing body of the district to secure the borrowing and loans provided for in the district's enabling statutes, are general obligation bonds within the purview and for the purposes of s 215.84, F.S. The definition of governmental unit contained in subsection (2)(a) of that statute would include special districts such as the Monroe County Mosquito Control District. This statute as specified in subsection (3) provides that `[b]onds may bear interest at a rate not to exceed an average net interest cost rate, which shall be computed by adding 150 basis points to the 20 `bond-buyer' Average Yield Index published immediately preceding the first day of the calendar month in which the bonds are sold.' But as set forth in subsection (4), `[u]pon the request of a governmental unit, the State Board of Administration may authorize, for a specific issue or reissue of bonds, a rate of interest in excess of the maximum rate prescribed in subsection (3).' Subsection (4) goes on to specify the required supporting data needed to be included in such a request and the criteria the State Board of Administration shall consider in making a determination.
It is therefore my opinion that the Board of Commissioners of the Monroe County Mosquito Control District is authorized by Ch. 74-537, Laws of Florida, to borrow up to one hundred fifty thousand dollars ($150,000.00) in order to carry out the statutorily prescribed purposes of the district; if the obligations of the district securing any such loans are secured by the full faith and credit of the district or payable from the proceeds of the district's ad valorem taxes, such obligations may bear interest at a rate not to exceed that prescribed by s215.84(3), F.S., or such rate of interest in excess thereof as may be authorized by the State Board of Administration upon the request of the district as provided in s 215.84(4), F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General